UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                            :
GISELA STOCKSTILL,                          :
                                            :       CASE NO. 1:09-CV-2962
                  Plaintiff,                :
                                            :
vs.                                         :       OPINION & ORDER
                                            :       [Resolving Doc. No. 6.]
THE THOMAS J. UNIK COMPANY,                 :
                                            :
                  Defendant.                :
                                            :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        Plaintiff Gisela Stockstill ("Plaintiff") moves the Court to remand this case arising out of an

alleged failure to provide earned employment benefits.  [Doc. 6.] Defendant The Thomas J. Unik

Company ("Defendant") opposes the motion, and the Plaintiff has replied. [Docs. 8, 15.]

        For the following reasons, the Court **DENIES** the Plaintiff's motion to remand this case to

the Court of Common Pleas for Cuyahoga County.

## I. Background

        Plaintiff Gisela Stockstill worked for Defendant the Thomas J. Unik Company for 30 years,

until the Defendant terminated her employment in November 2008.  [Doc. 1-2 at 1-2.]  The Plaintiff

claims that the Defendant has refused to pay her compensation for unused sick days and vacation

days and has refused to transfer a life insurance policy she claims the Defendant owes her.  [*Id.* at

2.]

Case No. 1:09-CV-2962
Gwin, J.

The Plaintiff filed a complaint in the Cuyahoga County Court of Common Pleas on November 4, 2009, bringing claims for breach of contract, unjust enrichment, promissory estoppel, fraud, intentional infliction of emotional distress, and violations of Ohio Revised Code §§ 4111.03 and 4111.10. [Doc. 1-2.] On December 22, 2009, the Defendant removed the case to this Court. [Doc. 1.] In its notice of removal, the Defendant argues that the Plaintiff's claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., and are thus removable. [*Id.*] The Defendant also asserts counterclaims against the Plaintiff for breach of contract, breach of fiduciary duty and/or duty of loyalty, defamation, and tortious interference with business relations. [Doc. 5.]

The Plaintiff now moves to remand the case to the Cuyahoga County Court of Common Pleas, claiming that the Defendant did not prove the existence of an ERISA plan, and therefore failed to show that ERISA preempts the state law claims. [Doc. 6.] The Defendant argues that removal was proper because the life insurance benefits the Plaintiff claims are part of an ERISA plan. [Doc. 8.]

## II. Legal Standard

A defendant may remove any civil action brought in state court "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Federal question jurisdiction exists in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The party seeking removal bears the burden of establishing federal question jurisdiction. *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453-54 (6th Cir. 1996).

A case "arises under" federal law:

only when the plaintiff's statement of his own cause of action shows

-2-

Case No. 1:09-CV-2962
Gwin, J.

> that it is based upon [federal] laws or the Constitution. It is not
> enough that the plaintiff alleges some anticipated defense to his cause
> of action, and asserts that the defense is invalidated by some
> provision of the Constitution of the United States.

*Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). This requirement is known

as the "well-pleaded complaint rule." *See, e.g.*, *Kerr-McGee Chem. Corp. v. Ill.*, 459 U.S. 1049

(1982) (citations omitted).

Under the well-pleaded complaint rule, the plaintiff is master of his complaint. *See*

*Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The Supreme Court does not allow a

defendant to foist federal jurisdiction onto a plaintiff's complaint: "the question whether a party

claims a right under the constitution or laws of the United States is to be ascertained by the legal

construction of its own allegation, and not by the effect attributed to those allegations by the adverse

party." *Tenn. v. Union & Planters' Bank*, 152 U.S. 454, 460 (1894) (citation omitted). A defendant

cannot "create removal jurisdiction merely by raising a federal question as a defense." *Her Majesty*

*The Queen In Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 344 (6th Cir. 1989)

(citation omitted).

Moreover, "the mere presence of a federal issue in a state cause of action does not

automatically confer federal-question jurisdiction." *Merrell Dow Pharm. Inc. v. Thompson*, 478

U.S. 804, 813 (1986). Instead, the cause of action must contain a "substantial" federal issue. *Id.* at

813-14. In determining whether removal is proper, a court should consider the facts disclosed in

the record as a whole and may look beyond the face of the complaint. Charles A. Wright, Arthur R.

Miller, et al., 14C Federal Practice and Procedure § 3734 (4th ed.).

If a federal court determines that a case does not raise a substantial federal question, it must

Case No. 1:09-CV-2962
Gwin, J.

remand the case. 28 U.S.C. § 1447(c).  Likewise, if a party improperly removes a case to federal court, the court must remand the case back to the appropriate state court. 28 U.S.C. § 1447(d).  If a federal court is in doubt of its jurisdiction, it must resolve such doubt in favor of state court jurisdiction.  *See Brierly v. Alusuisse Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999).  Because the removal statutes implicate federalism concerns, a court must narrowly construe the statutes against removal.  *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757 (6th Cir. 2000).

### III. Analysis

The Plaintiff argues that the Defendant improperly removed this action because it failed to prove the existence of an ERISA plan which preempts state law claims.  The Defendant argues that the life insurance benefits are ERISA plan benefits, thus its removal was proper.

To determine whether a plan qualifies as an ERISA benefits plan, this Court undertakes a three-step factual inquiry.  *See Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 434 (6th Cir. 1996).  First, the Court applies the "safe harbor" regulations established by the Department of Labor to determine whether the program is exempt from ERISA.  Second, the Court asks whether from the surrounding circumstances there is a "plan" by inquiring whether a reasonable person could ascertain: (1) the intended benefits; (2) a class of beneficiaries; (3) the source of financing; and, (4) the procedures for receiving benefits (the "*Dillingham* factors").  Finally, the Court determines whether the employer established or maintained the plan with the intent of providing benefits to its employees. *Thompson*, 95 F.3d at 434-35.  "[V]irtually all state law claims relating to an employee benefit plan are preempted by ERISA." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir.1991).  Moreover, "[t]he purported plan need not be formal or written to qualify as an ERISA benefit plan, but rather, the court must look to the 'surrounding circumstances' to see if the

-4-

Case No. 1:09-CV-2962
Gwin, J.

factors have been met." *Williams v. WCI Steel Co., Inc.*, 170 F.3d 598, 602-03 (6th Cir. 1999).

The Plaintiff argues that the Defendant failed to establish any factual grounds that satisfy these factors. [Doc. 6.]  The Plaintiff cites *Aetna Health Inc. v. Davila*, 542 U.S. 200, 211, 124 S.Ct. 2488, 2496 (2004), to argue that the Court cannot determine whether the plan is within ERISA's scope without looking at the plan's policy document, which the Defendant failed to attach. However, as noted above, the relevant inquiry is whether the Court can determine if the factors are satisfied from the surrounding circumstances.  The Court is not restricted or required to examine the policy, particularly when the surrounding circumstances satisfy the inquiry.  Furthermore, *Aetna* is not analogous to the case at hand because it involved a dispute over whether an ERISA plan covered a particular benefit, rather than whether an ERISA plan existed.  *Aetna*, 542 U.S. at 211 ("It is clear, then, that respondents complain only about denials of coverage promised under the terms of ERISA-regulated employee benefit plans.").

Turning to the first step in the factual inquiry, the Court agrees with the Defendant that the safe harbor provision does not apply.  The "safe harbor" provision excludes from ERISA coverage certain group-type insurance programs.  *Helfman v. GE Group Life Assur. Co.*, 573 F.3d 383, 388 (6th Cir. 2009).  "For the safe harbor to apply, all four of the following criteria must be met: (1) No contributions are made by an employer or employee organization; (2) Participation [in] the program is completely voluntary for employees or members; (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the

Case No. 1:09-CV-2962
Gwin, J.

program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs." *Helfman*, 573 F.3d at 388-89 (internal citation omitted).  The Defendant asserts that its July 2007 New Business Cost Summary documents its contribution to premium payments.  [Doc. 8-2 at 7.] Nicole Clancy, an employee of the Defendant, stated that the Defendant made contributions from its own funds for the July 2009 premiums. [Doc. 8-2 at 3.]  Also, the Defendant argues that the July 2009 letter from Plaintiff's counsel stating that the life insurance policy was "part of [the Plaintiff's] compensation and benefit package" further suggests that the Defendant made contributions as a benefit to employees. [ Doc. 8-1 at 3.]

Also, the Defendant argues that the safe harbor provision does not apply because it actively endorsed the program. [Doc. 8 at 5.] An employer may actively endorse a program through substantial involvement in the creation of a plan, or by listing itself as a plan administrator. *Thompson*, 95 F.3d at 436.  Based on the surrounding circumstances, it appears that the Defendant was actively involved in setting up the program with UnitedHealthcare, as evidenced by listing itself as the owner and purchasing the plan. [Doc. 8 at 5.] Since the Defendant made contributions and endorsed the program, the safe harbor provision does not apply.

After determining that the safe harbor provision is inapplicable, the Court evaluates whether a plan exists by inquiring into whether a reasonable person could ascertain: (1) the intended benefits; (2) a class of beneficiaries; (3) the source of financing; and, (4) the procedures for receiving benefits. *Thompson*, 95 F.3d at 437-38.

Despite the Plaintiff's argument that there is no proof she benefitted from the life insurance plan, the Defendant has satisfied the first *Dillingham* factor.  Life insurance is recognized as a type

Case No. 1:09-CV-2962
Gwin, J.

of employee welfare benefit plan. 29 U.S.C. § 1002(1); *See also Williams*, 170 F.3d at 602. Additionally, the July 2009 letter from the Plaintiff's attorney states that the life insurance policy was part of her benefit package. [Doc. 8-1 at 3.] Also, the Plaintiff's Standard Confirmation Inquiry includes the dollar amount of this policy, which shows the extent of her benefit from this plan. [Doc. 8-2 at 4.]

The benefits to the remainder of the employees are also reasonably ascertainable.  In *Williams*, the court held that providing amorphous benefits without specifically identifying what they entail was insufficient to satisfy this *Dillingham* factor. 170 F.3d at 603; *See also Hughes v. White*, 467 F.Supp.2d 791 (S.D.Ohio,2006).  However, in this case, the Defendant's New Business Coverage Report lists each person's particular benefits, and the New Business Cost Summary includes the total coverage for all beneficiaries. [Doc. 8-2 at 6-7.]

Additionally, the second *Dillingham* factor is satisfied because the class of beneficiaries is reasonably defined.  The 2007 New Business Coverage Report lists everyone within the beneficiary class, including children and spouses of employees. [Doc. 8-2 at 6.]

The third *Dillingham* factor is also satisfied because a reasonable person could ascertain the source of financing.  The Defendant argues that the New Business Cost Summary illustrates that it funded the policy through monthly payments.  [Doc. 8-2 at 7.] Nicole Clancy, an employee of the Defendant, supports this assertion by stating in her declaration that the Defendant made all contributions for the premiums out of its own funds.  [Doc. 8-2 at 3.]  Additionally, even if the source of funding was not explicit, courts have assumed that it comes from  an employer's general assets.  *Hughes*, 467 F.Supp.2d at 801 ("While . . .the exact source of financing [has not been established] for the purported employee benefit plan, the courts have routinely held that it may be

Case No. 1:09-CV-2962
Gwin, J.

assumed that benefits are to be paid out of the general assets of the employer.").

Despite the Plaintiff's claim that none of the *Dillingham* factors are satisfied, her actions help establish the fourth factor because they reflect that a reasonable person could ascertain the procedures for receiving benefits.  *Cf. Hughes*, 467 F.Supp.2d at 802-03 (lack of documentation and plaintiff's failure to seek benefits illustrated that procedures were not reasonably ascertainable).  In this case, the Defendant has shown that Plaintiff Stockstill was aware of how to obtain benefits.  The July 2007 Confirmation Letter instructed the Defendant to have its employees "carefully review the Certificate of Insurance or Information Guide for specific information regarding coverage." [Doc. 8-2 at 5.]  Furthermore, the July 2007 Notification of Coverage Letter informed the Plaintiff that she was approved for particular coverage and recommended that she review the Certificate of Insurance or Information Guide.  [Doc. 8-2 at 8.]  The second page of that letter explains the procedures the Plaintiff must follow if approved or declined for coverage.  [Doc. 8-2 at 9.]  Through these letters, the Plaintiff was on notice of where to look for procedures to obtain benefits.  Additionally, the Standard Confirmation Inquiry she received included a phone number and a customer service agent's name that she could contact with questions.  [Doc. 8-2 at 4.] Thus, the Defendant has shown that the Plaintiff was reasonably able to determine the procedures for requesting coverage and benefits.

Since the safe harbor provision does not apply and the *Dillingham* factors established that there is a plan, the first two steps have been satisfied to confer federal jurisdiction under ERISA. The final step requires the Defendant to demonstrate that the plan was established or maintained with the intent to provide benefits to employees.  By creating a plan that provides specific types of insurance to employees, a court may find that the employer had an intent to maintain a benefit program. *See Thompson*, 95 F.3d at 434; *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 977 (5th

Case No. 1:09-CV-2962
Gwin, J.

Cir.1991) ("evidence must show that the employer had an intent to provide its employees with a welfare benefit program through the purchase and maintenance of [the] group insurance policy.");

*McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 236 (5th Cir.1995) ("Finally, we ask whether the employer "established or maintained" the plan for the purpose of providing benefits to its employees. [The employer] did so, purchasing the insurance, selecting the benefits, identifying the employee-participants, and distributing enrollment and claim forms.").

Based on the surrounding circumstances, the Court finds that the plan was established for the purpose of providing benefits to employees.  The July 2007 Confirmation Letter states that the Defendant purchased a group plan from UnitedHealthcare.  [Doc. 8-2 at 5.] That document includes coverage decisions "for each employee and dependent," which indicates that the Defendant established the plan for its employees.  [Doc. 8-2 at 5-6.]  Additionally, the July 2009 letter from the Plaintiff's attorney states that the insurance policy was "part of [the Plaintiff's] compensation and benefit package." [Doc. 8-1 at 3.]  Furthermore, the  Plaintiff's 2009 Standard Confirmation Inquiry shows that the policy was maintained for two years and was to continue in the future, which demonstrates its long-term nature. [Doc. 8-2 at 4-5.] *See Weinstein v. Paul Revere Ins. Co.*, 15 F.Supp.2d 552, 558 (D.N.J.,1998) ("A significant consideration is whether the employer intended to provide benefits on a regular and long-term basis.").  Since the plan was established or maintained with the intent of providing benefits to employees, all three steps have been satisfied to prove that it is within the scope of ERISA.

The removing party bears the burden of showing that the requirements of removal have been satisfied.  The Defendant has presented sufficient facts for the Court to find that the plan is within the scope of ERISA.  The Court therefore concludes that it has subject matter jurisdiction over this

Case No. 1:09-CV-2962
Gwin, J.

action and that the Defendant properly filed its notice of removal.  Accordingly, the Court **DENIES**

the Plaintiff's motion to remand.

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** the Plaintiff's motion to remand this case to

the Cuyahoga County Court of Common Pleas.

IT IS SO ORDERED.


Dated: April 15, 2010                          s/          *James S. Gwin*
                                               JAMES S. GWIN
                                               UNITED STATES DISTRICT JUDGE